IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **NAUTILUS INSURANCE COMPANY, an Arizona Corporation,**<br><br>      **Plaintiff,**<br><br>      v.<br><br>**DUBIN & ASSOCIATES, INC., an Illinois Corporation, and WILLIE WAKEFIELD, Individually,**<br><br>      **Defendants.** | **Case No. 11 C 1251**<br><br>**Hon. Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

  Before the Court is Plaintiff Nautilus Insurance Company's (hereinafter, "Nautilus") Motion for Summary Judgment. In its response, Defendant Dubin & Associates, Inc. (hereinafter, "Dubin") requests Summary Judgment on its behalf or, in the alternative, a stay of this litigation until resolution of the underlying bodily injury lawsuit. For the following reasons, Nautilus' Motion for Summary Judgment is granted in its entirety and Defendant's Motions are denied.

**I. BACKGROUND**

  Nautilus issued to Dubin a Commercial General Liability Coverage insurance policy effective April 14, 2004 through April 14, 2005. The policy insures against bodily injury for occurrences on Dubin's worksites, but does not cover those defined as employees under the policy. The policy covers bodily injury

resulting from negligence, but not injury "expected or intended" by the insured.

On March 16, 2005, Dubin was the general contractor of a building site at 4500 West Belmont Avenue, Chicago, Illinois. Also on site were Dubin subcontractors Air-Rite Heating and Cooling ("Air-Rite") and Asbach & Vanselow, Inc. ("Asbach"), a carpentry company. Defendant Willie Wakefield ("Wakefield") worked for Air-Rite and was injured when lumber controlled by Asbach fell from the third floor. Wakefield sued Dubin in DuPage County, Illinois on August 23, 2006, alleging (Count I) construction negligence and (Count III) a "willful violation" of the Illinois Structural Work Act. Specifically, Count III alleges that Dubin knew there were no stays or supports in place as required by the Act to prevent the accident. Pl.'s Statement of Undisputed Material Facts (Pl.'s "SUMF"), Ex. A, 1-7.

Nautilus wrote Dubin on March 28, 2007, advising Dubin it had retained the law firm of Adams Swatek, LLC to defend the Wakefield lawsuit on Dubin's behalf. It also stated:

> Please do not mistake our providing a legal defense to you as an admission of coverage for all the claims and damages set forth in the [Wakefield] petition.

Pl.'s SUMF, Ex. C, 1. The letter then went on to explain that it viewed the "expected or intended" exclusion as applying to the "willful" allegation in Count III. However, Nautilus, at that time, did not specifically identify as a possible grounds for non-

coverage the fact that Wakefield might qualify as an uncovered "employee" under the policy's definition of that term. However, it did advise Dubin that:

> Nautilus Insurance Company reserves the right to disclaim any liability for such damages, and to bring an action in an appropriate state or federal court of competent jurisdiction and venue, in order to limit, obtain a declaration, or interplead, in order to enforce the limitations mentioned herein.
>
> * * *
>
> Additionally, we reserve the right to withdraw from the defense, upon appropriate written notification to you, if at any time it becomes apparent that none of the damages being claimed are covered under the policy with Nautilus Insurance Company.
>
> * * *
>
> Nautilus Insurance Company continues to reserve all rights under the policy and reserves its rights to supplement this letter at a later date. The specifications of the above policy provisions for non-coverage should not be deemed as a waiver of any of the provisions, terms or conditions under the policy that you may have.

*Id*. at 4.

Nautilus filed an action in this Court on February 22, 2011 seeking a declaration that it had no duty to defend on the grounds that Wakefield, as the employee of a Dubin subcontractor, was not covered under the policy. The relevant exclusionary portion of the policy states:

> This insurance does not apply to:
>
> * * *
>
> "Bodily Injury" to:
> (1) An "employee" of the insured arising out of and in the course of:

> (a) Employment by the insured; or
> (b) Performing the duties related to the conduct of the insured's business

Pl.s' SUMF, Ex. B, 16; ECF No. 57, PageID 371. The policy's original definition of employee arguably did not include the employee of a subcontractor (*Id*. at 26; ECF No. 57, PageID 382) but was amended by a three-page endorsement. (*Id*. at 44; ECF No. 57, PageID 401). The endorsement provides:

> As respects this endorsement only, the definition of "Employee" in DEFINITIONS is replaced by the following: "Employee" shall include, but is not limited to, any person or persons hired by, loaned to, leased to, contracted for, or volunteering services to the insured, whether or not paid by the insured.

*Id.*

## II. **LEGAL STANDARD**

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED R. CIV. P. 56(c) and *Diamantopoulos v. Am. Family Mut. Ins. Co.*, 10-2522, 2012 U.S. Dist. LEXIS 26519 at *2-3 (N.D. Ill. February 27, 2012). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact. Once it does, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Id.* All evidence must be viewed in the light most favorable to the non-moving party. Contract interpretation lends itself to summary judgment because the interpretation of a

- 4 -

contact is a matter of law. *See, Cent. States, S.E. & S.W. Areas Pension Fund v. Waste Mgmt. of Mich., Inc.*, 10-3286, 2012 U.S. App. LEXIS 4074 at *7-8 (7th Cir. February 29, 2012)

### III. ANALYSIS

As a preliminary matter, the Court must address whether there is sufficient evidence in the record to indicate that Wakefield's employer, Air-Rite, was a Dubin subcontractor. Dubin filed a Motion to File a Sur-reply to clarify that it had not admitted Air-Rite was a subcontractor, merely that it admitted that the underlying Complaint alleged Air-Rite was a Dubin subcontractor. The Court denied the motion, but it acknowledged Dubin's point.

Nonetheless, the existence of a metaphysical doubt as to a material fact is insufficient to defeat a motion for summary judgment. *Nat'l Inspection & Repairs, Inc. v. George S. May Int'l Co.*, 600 F.3d 878, 882 (7th Cir. 2009). Before denying Dubin's Motion for Sur-reply, this Court point-blank asked Dubin's counsel in open court if it was contending Air-Rite was not a subcontractor. Dubin's counsel stressed it was not denying that fact. Moreover, Dubin's declaration by Guru Naganat is dedicated to explaining that Dubin bought its policy in question "for the purpose of covering any potential liability for worksite injuries to its subcontractor's employees at the job site." Decl. of Guru Naganat, 2; ECF No. 67, 2. There would be no point of making that declaration if Air-Rite were not a subcontractor, and such a declaration (along with counsel's response in open court) is

implicit acknowledgment of that fact. The Court finds Air-Rite was a subcontractor of Dubin.

Moving to the heart of the matter, Nautilus argues that Wakefield, as the employee of a Dubin subcontractor, is covered by the policy exclusion in the endorsement as someone "contracted for . . . the insured."

Dubin argues under three theories that summary judgment for Nautilus is inappropriate here. First, it argues that the endorsement definition of "employee" does not include Wakefield, the employee of a Dubin subcontractor. Alternately, it argues that even if Wakefield fits the contract definition of a Dubin employee, Nautilus is estopped from denying defense and coverage based on Nautilus' representations in its March 28, 2007 letter advising it was providing Dubin with legal counsel under the policy. Finally, it argues summary judgment is inappropriate because it would decide matters that are crucial to the underlying lawsuit. The Court addresses each argument in turn.

**A. The Policy Definition of "Employee" Includes Wakefield**

Like any contract, an insurance policy is construed according to the plain and ordinary meaning of its unambiguous terms. *Auto-Owners Ins. Co. v. Munroe*, 614 F.3d 322, 324 (7th Cir. 2010) (citing *Nicor, Inc. v. Associated Elec. & Gas*, 860 N.E.2d 280, 286 (Ill. 2006)). When policy language is ambiguous, courts are to construe the terms of the policy against the insurer. *Capitol Indem. Corp. v. Elston Self Serv. Wholesale Groceries, Inc.*, 559

F.3d 616, 620 (7th Cir. 2009) (citing *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005)). Policy terms are ambiguous if they are reasonably susceptible to more than one interpretation, not simply if the parties can suggest creative possibilities for their meaning, and a court will not search for ambiguity where there is none. *BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813, 819 (7th Cir. 2008).

Two courts, including one in this district, have considered the language of this endorsement in the context of whether it clearly excludes from coverage the employee of a subcontractor of the insured. *See, Nautilus Ins. Co. v. Jona Enters., Inc.*, No. 09-4654, 2012 U.S. Dist. LEXIS 10703, at *12-13 (N.D. Ill. Jan. 30, 2012); *Nautilus Ins. Co. v. Matthew David Events, Ltd.*, 69 A.D.3d 457, 460-461 (N.Y. App. Div. 2010). Both have concluded it does. Dubin argues that the language is ambiguous, in that it could be read to include *only* those parties "contracted for" directly by the insured (as opposed to this case, where Dubin contracted directly with Air-Rite, who in turn contracted with Wakefield). However, this Court is in agreement with both Judge Edmond E. Chang of this District and the New York Court. To read the language as Dubin argues, the Court would have to view the phrase "whether or not paid by the insured" as a nullity because it would contemplate a situation where a worker would contract directly with Dubin but then be paid by someone else, or not be paid at all. While not physically impossible or inconceivable, it is clearly not in the

- 7 -

every day, common sense understanding of how construction site employment works, and would be a "creative possibility" that *BASF* prohibits.

Dubin makes a half-hearted argument, through the declaration of its Chief Financial Officer, that it believed subcontractors' employees' injuries were covered under the policy based on the policy's declarations page. The page contains an item reading: "Contractors – subcontracted work – in connection with construction, reconstruction, repair or erection of buildings NOC." Decl. of Guru Naganat, 2; ECF 67, 2. But this is a general description and the endorsement is more specific. "Where an inconsistency arises between a clause that is general and one that is more specific, the latter prevails." *Mercury Indem. Co. v. Kim*, 830 N.E.2d 603, 617 (Ill. App. Ct. 2005) (declining to find ambiguity in an insurance policy based on the words of the declarations page when the policy was more explicit). This argument might have more sway if the words of the declarations page could not be harmonized with the endorsement, but they can be. For instance, injury of a passerby by a subcontractor could conceivably fit the language of both portions of the contract, so the two phrases are not mutually exclusive.

The Court therefore finds Wakefield an "employee" as defined by the policy and excluded from coverage under the policy.

### B. Nautilus is Not Estopped to Deny Coverage

Dubin next argues that Nautilus is estopped to deny coverage because (1) it failed to raise the employee exclusion in its reservation of rights letter, and (2) the exclusion it did raise (the "expected or intended injury" exclusion) presented a conflict of interest for the Nautilus-provided attorneys, of which Dubin was not adequately advised.

"Illinois requires an insurer that denies coverage either to defend under a reservation of rights or to seek a declaratory judgment of non-coverage; if it takes neither step while the underlying litigation proceeds, it is estopped to deny coverage." *American Safety Cas. Ins. Co. v. City of Waukegan*, Nos. 11-2775, 11-2789 & 11-2961, 2012 U.S. App. LEXIS 5496, at *25 (7th Cir. Mar. 16, 2012).

Although an insurer is not required to assert all of its defenses to liability in its "reservation of rights" letter to its insured (*Tobi Eng'g, Inc. v. Nationwide Mut. Ins. Co.*, 574 N.E.2d 160, 162 (Ill. App. Ct. 1991)), a "bare notice of a reservation of rights is insufficient unless it makes specific reference to the policy defense which may ultimately be asserted and to the potential conflict of interest." *Cowan v. Ins. Co. of North Am.*, 318 N.E.2d 315, 326 (Ill. App. Ct. 1974); *see also Royal Insur. Co. v. Process Design Assoc.*, 582 N.E.2d 1234, 1239 (Ill. App. Ct. 1991) (finding reservation of rights inadequate where insurer used conditional language regarding its intent to reserve rights).

- 9 -

*Royal* also found estoppel when the insurer did not inform insured of the specific policy defense (which involved a conflict of interest) and then waited three years to file a declaratory judgment action on that basis. *Id*. at 1242.

Dubin presents the failure to bring up certain issues in the reservation of rights letter as a matter of estoppel, and most of the caselaw does as well. However, *Tobi* and a few other cases have treated the issue as one of waiver. *Id*.; *Universal Fire & Casualty Ins. Co. v. Jabin*, 16 F.3d 1465, 1470 (7th Cir. 1994).

In *Jabin*, an insurer who ultimately denied coverage for a reason not specified in its reservation of rights letter was deemed not to have waived that policy defense. The Seventh Circuit interpreted *Cowan* and *Royal* as requiring the listing of specific defenses in the reservation of rights letter only when those defenses "may cause a serious conflict of interest between insurer and insured." *Jabin*, 16 F.3d at 1471 n.4.

*Royal* defined the issue as one of estoppel, and noted that an insurer's conflict of interest in wanting to deny coverage does not, alone, support a presumption of prejudice. "However, if by the insurer's assumption of the defense the insured has been induced to surrender his right to control his own defense, he has suffered a prejudice which will support a finding that the insurer is estopped to deny policy coverage."

### *1. Failure to Claim the Employee Exclusion*

Whether viewed as waiver or estoppel, the outcome is the same. Dubin claims Nautilus' reservation of rights letter was inadequate because it did not specify that it might deny coverage using the employee exclusion. However, *Tobi* provides that an insurer need not list every possible policy defense in its reservation of rights letter.

Nautilus specifically noted in its reservation of rights letter that it "reserves its rights to supplement this letter at a later date." Pl.'s SUMF, Ex. C, 4; ECF 57-3, 4. It also reserved its right to invoke other terms of the policy and to seek declaratory judgment.

The undisputed facts show only that Nautilus reserved its right to invoke any policy exclusion and then did so in this lawsuit. Even though the employee exclusion was not cited explicitly, *Tobi* and *Jabin* decree this does not result in waiver. There is no estoppel, because Dubin does not argue it was prejudiced by this failure to raise the employee exclusion. It only argues it was prejudiced by the failure to raise the conflict of interest, which will be addressed next.

### *2. Failure to Disclose Adequately the Conflict of Interest*

While an insurer need not spell out all possible policy defenses that is not the case where a policy defense involves a conflict of interest, however. *See Jabin*, 16 F.3d at 1471 n.4.

- 11 -

This begs the question of what raises a conflict-of-interest situation serious enough to merit estoppel. *Cowan* defined a conflict situation broadly, as a "possible conflict" (*Id*. at 326). Judge Matthew Kennelly of this District also invoked a somewhat expansive definition, citing *Royal*: "To determine if there is a conflict of interest, we compare the allegations in the underlying lawsuit to the terms of the insurance policy to assess whether the insurer would benefit by 'providing a less than vigorous defense to those allegations.'" *Utica Mut. Ins. Co. v. David Agency Ins.*, 327 F.Supp. 2d 922, 928 (N.D. Ill. 2004).

However, other cases have taken a more narrow view of what constitutes a "serious" enough conflict to merit estoppel. The Seventh Circuit has read Illinois law as requiring the insurer to benefit from a mutually exclusive, either/or liability in the underlying litigation. *Maneikis v. St. Paul Ins. Co.*, 655 F.2d 818, 825 (7th Cir. 1981). For instance, *Maneikis* discussed *Thornton v. Paul*, 384 N.E.2d 335 (Ill. 1978), where the insurer would benefit equally from a complete exoneration as from a finding of intentional battery, because it was only liable for negligence actions. *Id*. at 824.

Under this framework, Nautilus argues the conflict in this case does not rise to that level. "In this case, the sole question is whether the *Wakefield* Complaint in fact alleges alternative theories of liability – one of which is covered, and the other of which is excluded under the 'expected or intended' exclusion."

- 12 -

Pl.'s Reply, 7-8. Because "willful" is not coextensive with "expected or intended," Nautilus argues, a Court could find that "willful" violation could exist where "the existence of dangerous conditions could have been discovered by reasonable care." This, Nautilus claims, would not be the same as "expected" by the insured and would still be covered under the policy. Pl.'s Reply, 8. In other words, skewing facts to render Dubin guilty of Count III (the willful count) would not necessarily leave Nautilus free from indemnifying Dubin on Count I (the negligence count).

But Nautilus fails to note that the Seventh Circuit has not been steadfast in its requirement that an insurer face an either/or outcome for a conflict to be serious. After *Maneikis*, Illinois courts revised the either/or prism, a fact recognized by the Seventh Circuit when it later acknowledged that Illinois Courts repudiated *Maneikis*, finding that "the either/or dichotomy need not be the only way for a legitimate conflict of interest to arise. . . . Under *Nandorf*, then, a conflict may exist when the insurer lacks incentive to defend its insured on a portion of the claims that appear not to be covered by the insurance contract." *Littlefield v. McGuffey*, 979 F.2d 101, 106 (7th Cir. 1992) (citing *Nandorf, Inc. v. CAN Insurance Cos.*, 479 N.E.2d 988, 992 (Ill. App. Ct. 1985).

On the basis of *Littlefield*, a court in this district has ruled that an insurer must allow the insured to select its own counsel when there is a serious conflict between the insurer and

insured, even if there is no complete either/or dichotomy. *See AMEC Constrs. Mgmt., Inc. v. Regent ins. Co.*, No. 03-2880, 2004 U.S. Dist. LEXIS 4003, at *13-14 (N.D. Ill. Mar. 12, 2004) (finding a serious conflict where the insurer of a subcontractor additionally insured the also-sued contractor. The court noted that although one possible configuration of facts could be envisioned which would exonerate both insureds, because another configuration of facts could result in a finding of liability against the subcontractor but not against the contractor, the subcontractor was entitled to select its own counsel).

Still more recently, Judge Richard Posner seemed to weigh in on the side of a more expansive definition of conflict of interests. *See R. G. Wegman Constr. Co. v. Admiral Ins. Co.*, 629 F.3d 724, 730 (7th Cir. 2011) (noting "'conflict of interest' . . . doesn't mean that the conflicted party is engaged in conduct harmful to another party. It means that their interests are divergent, which creates a potential for such harm."). *Id*.

The Court finds that Nautilus faced a serious conflict of interest. While its attorneys could serve both masters by exonerating Dubin altogether, it could also serve Nautilus by showing "expected or intended" conduct, which would mean Nautilus would not have to pay on Count III while Dubin would.

However, what Dubin forgets is "[p]rejudice resulting from a conflict of interest . . . will not be presumed and the burden of establishing it rests with the insured and must be proved by clear,

concise, and unequivocal evidence." *Royal*, 582 N.E.2d at 1240. Count III, the one concerning "willful" conduct that might trigger the "expected or intended" exclusion, has, in fact, been dismissed. Dubin provides no evidence (nor even suggests) that it was prejudiced by Nautilus' attorneys trying to skew facts to show its conduct was even willful, let alone expected or intended. Dubin argues it might still be prejudiced because the Count III dismissal could be reversed on appeal, but this does nothing to show that Nautilus' attorneys skewed facts against it, an essential part of *Royal*. *Royal*, 582 N.E.2d at 1240-1241. In that case, memoranda showed that the insurer's attorneys were actively seeking to discover and bring forth facts that would take their client's case out of coverage. Nothing to that extent has been suggested here. Dubin suggests the reservation of rights letter did not fully explain the conflict of interest and is thus like *Utica Mut. Ins. Co. v. David Agency Ins.*, Inc., 327 F.Supp.2d 922 (N.D. Ill. 2004). It is undisputed that Nautilus merely noted in its letter that it interpreted the policy as excluding coverage for Count III and did not specifically identify that that posed a conflict of interest for Nautilus and the retained lawyers. Nor did Nautilus note that Dubin, because of the conflict of interest, had the right to obtain counsel at its expense. However, as *Utica* notes "we have found no case specifically requiring an insurer to disclose that it will pay for the insured's counsel in that situation." *Utica*, 327 F.Supp.2d at 931.

Nautilus undoubtedly should have explained its conflict of interest. But this case is different from *Utica* in several ways. First, Nautilus did not actively misrepresent that Dubin would have to bear the cost of hiring an independent attorney as the insurance company did in *Utica*. Second, the exclusion that Nautilus ultimately invoked (the employee exclusion) was *not* the exclusion that posed a conflict of interest. Lastly, as mentioned before, prejudice is decidedly not an issue here because the count posing the conflict of interest has been dismissed. In a different situation, Nautilus' failure to be forthright in discussing its conflict of interest might well result in a different outcome. But here no evidence of prejudice has been presented.

Nowhere in its statement of facts does Dubin offer evidence that it was prejudiced or that it was prevented from making an intelligent choice to accept the counsel Nautilus offered or to retain its own independent attorneys. Local Rule 56.1 requires that. "The obligation set forth in Local Rule 56.1 'is not a mere formality.'" *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal citations omitted). The combination of the missing Rule 56.1 facts and the differentiation from *Utica* causes this Court to find that Nautilus is not estopped from disclaiming any duty to defend and, additionally, indemnify, and the Court so finds Nautilus has no such duties under the terms of the policy.

### C. Declaratory Judgment is not Premature

Finally, Dubin argues summary judgment is inappropriate here because it would "bind the parties in the underlying litigation on any issues therein." *American Family Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 451 (Ill. 2000). Because the case revolves around who had the "right to . . . and did direct, supervise and control the construction work," and Wakefield, Dubin argues a finding that the employee exclusion applies determines the relationship of the parties in the lawsuit below. The Court does not believe finding a contractual relationship between Dubin and Air-Rite establishes who had supervisory control over Wakefield and the site. The Court additionally declines to wait an indeterminate amount of time for the similar case of *Nautilus v. Jona*, 2012 U.S. Dist. LEXIS 10703, to be appealed before ruling in this case.

### IV. CONCLUSION

For the reasons state herein, summary judgment is granted in favor of Nautilus.

**IT IS SO ORDERED.**

 Harry D. Leinenweber, Judge
 United States District Court

**DATE:** 6/27/2012